AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

FILED

NOV 14 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | )  Case No.  **19MJ5107** |
| one black Lenovo cell phone, IMEI# 860069034122055 | ) ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 | Importation of a Controlled Substance; |

The application is based on these facts:

See attached Affidavit of Special Agent Miriam Marcais

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Miriam Marcais, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/14/2019

*Judge's signature*

City and state: San Diego, CA

Hon. Andrew G. Schopler
*Printed name and title*

1
## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT

2     I, Miriam Marcais, being duly sworn, hereby depose and state as follows:

3
## INTRODUCTION

4     1.    I make this affidavit in support of an application for a search warrant in
5 furtherance of a narcotics smuggling investigation conducted by Department of Homeland
6 Security, Homeland Security Investigations Special Agents for the following electronic
7 device:

8     a. one black Lenovo cell phone, IMEI# 860069034122055 ("TARGET
9     TELEPHONE"), described in Attachment A (incorporated herein by
10     reference);

11 seized from Federico Gutierrez-Ruiz on October 22, 2018, incident to his arrest for
12 importation of methamphetamine at the Tecate, California Port of Entry.

13     2.    The TARGET TELEPHONE is currently in the possession of the Department
14 of Homeland Security, Homeland Security Investigations, Immigration and Customs
15 Enforcement, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

16     3.    I seek authority to search the TARGET TELEPHONE for evidence of crimes,
17 specifically, violations of Title 21, United States Code, Sections 952 and 960, as described
18 in Attachment B (incorporated herein by reference) for the time period from August 23,
19 2018, through October 22, 2018.

20
## TRAINING AND EXPERIENCE

21     4.    I am a Special Agent with the Department of Homeland Security, Homeland
22 Security Investigations ("HSI") and have been so employed since November 2009. I am a
23 graduate of the Criminal Investigator Course and Immigration and Customs Enforcement,
24 Special Agent Training Program at the Federal Law Enforcement Training Center. I have
25 a Master's Degree in International Relations from the University of Chicago and a
26 Bachelor's Degree in Political Science from Virginia Wesleyan College. I am presently
27 assigned to the national security group in San Diego, CA. My duties include investigating

AFFIDAVIT IN SUPPORT OF APPLICATION    1
FOR SEARCH WARRANT

1  the illicit trafficking of controlled substances into the United States of America.  I am also
2  cross designated by the United States Drug Enforcement Administration ("DEA") to
3  conduct narcotics investigations and enforce the provisions of the Federal Controlled
4  Substance Act.

5      5.    As an HSI Special Agent, my duties include investigating the illegal
6  importation and trafficking of controlled substances.  I have received training in
7  investigating various controlled substances, including the importation of controlled
8  substances and controlled substance trafficking.  I have also had training in the methods
9  used by controlled substance traffickers to import and distribute drugs and to operate
10  detailed distribution networks. Since becoming an HSI Special Agent, I have been involved
11  in over one hundred narcotics trafficking investigations involving the importation,
12  distribution and sale of large quantities of controlled substances.  I have also worked with
13  and conferred with other agents with extensive experience in narcotics smuggling
14  investigations.  In the course of my duties, I have worked as the case agent, directing
15  specific drug-related investigations; I have worked as a co-case agent, assisting in the
16  investigation of drug-related investigations, I have worked as a surveillance agent and
17  observed and recorded movements of individuals trafficking in drugs and of those
18  suspected of trafficking in drugs; I have participated in the execution of search warrants; I
19  have initiated and conducted international and domestic controlled deliveries of narcotics,
20  I have initiated and executed numerous arrests for drug-related offenses, including
21  possession with the intent to distribute and the importation of controlled substances; and I
22  have interviewed defendants, witnesses and informants relating to the illegal trafficking of
23  controlled substances.  Through my observations and these interviews, I have gained a
24  working knowledge and insight into the normal operational habits of narcotics smugglers,
25  with particular emphasis on those who attempt to import narcotics into the United States
26  from Mexico at the San Diego international ports of entry.

27
28  AFFIDAVIT IN SUPPORT OF APPLICATION FOR     2
   SEARCH WARRANT

6.    Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities.  Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging cell phone applications such as WhatsApp, social networking messages, and videos reflecting co-conspirators or illegal activity.

7.    In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them.  Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in controlled substance smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.    Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, WhatsApp and other texting applications, the internet, video, social networking sites, and voice messages;

b.    Drug smugglers will use WhatsApp and other encrypted texting applications on cellular telephones to communicate because they believe that these services insulate their communications from law enforcement;

c.    Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

1      d.      Drug smugglers and their accomplices will use cellular telephones because

2      they can easily arrange and/or determine what time their illegal cargo will arrive at

3      predetermined locations.

4      e.      Drug smugglers will use cellular telephones to direct drivers to

5      synchronize an exact drop off and/or pick up time of their illegal cargo.

6      f.      Drug smugglers will use cellular telephones to notify or warn their

7      accomplices of law enforcement activity including the presence and location of marked

8      and unmarked units, as well as the operational status of Border Patrol checkpoints.

9      g.      Drug smugglers will use cellular telephones to communicate with each

10     other regarding payment and other financial arrangements relating to the transportation

11     of their illegal cargo.

12     9.      The facts set forth in this affidavit are based on my own personal knowledge;

13     knowledge obtained from other individuals during my participation in this investigation,

14     including other law enforcement officers; interviews; my review of documents related to

15     this investigation; communications with others who have personal knowledge of the events

16     and circumstances described herein; conversations with other agents experienced in

17     controlled substance investigations, and information gained through my training and

18     experience.  All the dates, times, and amounts listed in this affidavit are approximate.

19     Because this affidavit is submitted for the limited purpose of establishing probable cause

20     in support of the application for search warrants, it does not set forth each and every fact

21     that I or others have learned during the course of this investigation.

22                          **FACTS SUPPORTING PROBABLE CAUSE**

23     10.     On October 22, 2018, Federico Gutierrez-Ruiz ("Gutierrez) was arrested at the

24     Tecate Port of Entry for attempting to smuggle methamphetamine.  Gutierrez was the driver

25     and sole occupant of a grey 2001 Dodge Dakota with Mexican license plate.  15 packages

26     weighing approximately 15.92 kilograms were seized from the vehicle's exterior spare tire.

27

28     AFFIDAVIT IN SUPPORT OF APPLICATION FOR          4
       SEARCH WARRANT

1   An additional 15 packages weighing 10.8 kilograms were seized from the tailgate.  Prior to
2   his arrest on October 22, Gutierrez had crossed in the same vehicle on October 18, 2018,
3   and October 20, 2018.

4        11.    Gutierrez initially denied knowledge of narcotics and claimed he found a job
5   ad on Facebook and reached out to the representative named Karen.  Gutierrez claimed he
6   applied for the job approximately one month prior to his arrest.  The job required a driver's
7   license, car, and a visa to enter the United States.  He did not know where he was going in
8   the United States, but expected to be paid 8% of the merchandise he was going to bring
9   back.  Gutierrez would be notified of the location after he crossed, would drive to that
10  location and leave the car there, and return after being notified that the car was ready.  He
11  would then drive the car back to Mexico.  Gutierrez claimed he was supposed to smuggle
12  jewelry back into Mexico from Los Angeles and would be paid 8% of the value.

13       12.    Gutierrez subsequently admitted he met with an individual named Jose, who
14  allegedly worked for Karen and assisted Gutierrez in coordinating trips into the United
15  States to create a crossing history for him and the vehicle.  Jose or Karen provided Gutierrez
16  the vehicle and arranged for it to be registered in Gutierrez's name.

17       13.    Gutierrez admitted that on the day of his arrest, he had met Jose at a Starbucks
18  in Tijuana prior to crossing via Tecate.  Gutierrez left the vehicle outside the Starbucks and
19  sat with Jose inside for a short period of time.  An unknown male then approached Jose,
20  stated the car was ready and gave Jose gas money.  Jose handed the money to Gutierrez and
21  he left heading towards Tecate.  Gutierrez admitted that he thought he may have had drugs
22  in the vehicle.  Additionally, he believed he would be paid approximately $2,000 for the
23  trip.

24       14.    On November 20, 2018, Gutierrez was charged via Information with one count
25  of importation of methamphetamine in Case No. 18-CR-4998-CAB.  On January 29, 2019,
26  Gutierrez pleaded guilty to the charge.  On April 8, 2019, Gutierrez and his attorney

27

28  AFFIDAVIT IN SUPPORT OF APPLICATION FOR     5
    SEARCH WARRANT

1  participated in a safety valve debrief with the government. During the debrief, Gutierrez
2  identified a job ad on Facebook within a sales group listed as Craigslist Tecate. The job
3  was managed by two individuals, Karen Leyva and Jose Lopez. Gutierrez explained that
4  he had been in contact with Karen and Jose for approximately one month prior to crossing
5  the vehicle on October 22nd, 2018.

6      15.    Following the debrief, defense counsel provided screenshots of Facebook
7  messenger conversations between Gutierrez and Karen, and well as Karen Leyva's
8  Facebook page. A review of the Facebook page for Karen Leyva indicates the earliest
9  update to the page was made on August 23, 2018. A review of the messages between
10 Karen Leyva and Gutierrez indicates that Gutierrez provided Karen with his Mexican phone
11 number, and instructed her to call him. Additionally, Gutierrez admitted he was contacted
12 on the TARGET TELEPHONE during prior crossings and given directions where to take
13 the vehicle.

14     16.    Based on my experience and investigation in this case, I believe that Gutierrez,
15 Karen Leyva, Jose, as well as other persons as yet unknown, were involved in an on-going
16 conspiracy to import methamphetamine or some prohibited narcotics. Based on my
17 experience investigating narcotics smugglers, I also believe that Gutierrez may have used
18 the TARGET TELEPHONE to coordinate with co-conspirators regarding the importation
19 and delivery of the methamphetamine, and to otherwise further this conspiracy both inside
20 and outside the United States. I also know that recent calls made and received, telephone
21 numbers, contact names, electronic mail (email) addresses, appointment dates, text
22 messages, messages sent via texting applications such as WhatsApp, email messages,
23 messages and posts from social networking sites like Facebook, photographs, videos, and
24 other digital information are stored in the memory of cellular telephones which identify
25 other persons involved in narcotics trafficking activities.

26
27
28  AFFIDAVIT IN SUPPORT OF APPLICATION FOR    6
    SEARCH WARRANT

17.     Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of Gutierrez, Karen Leyva, Jose, and their co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, text messages, messages from texting applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of the cellular telephone described herein.  Because the TARGET TELEPHONE has been in the custody of HSI since the date of Gutierrez's arrest, I believe that this information continues to be stored on the TARGET TELEPHONE.

18.     Drug trafficking conspiracies require intricate planning and coordination.  This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States.  Co-conspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States.  In this case, evidence supports that probable cause exists to search the TARGET TELEPHONE for information dating back to August 23, 2018.  This is based upon a review of Karen Leyva's Facebook page, as well as Defendant's proffer and crossing history.

## SEARCH METHODOLOGY

19.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular service providers now allow for their

subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

22. Based on all of the facts and circumstances described above, there is probable cause to believe that Gutierrez used the TARGET TELEPHONE to facilitate the offense of importing methamphetamine or other federally-controlled substances. The TARGET

AFFIDAVIT IN SUPPORT OF APPLICATION FOR       8
SEARCH WARRANT

1   TELEPHONE was likely used to facilitate the offenses by transmitting and storing data,
2   which constitutes evidence and instrumentalities of violations of Title 21, United States
3   Code, Sections 952 and 960.

4       23.    There is also probable cause exists to believe that evidence and
5   instrumentalities of illegal activity committed by Gutierrez continues to exist on the
6   TARGET TELEPHONE.

7       24.    Based upon my experience and training, consultation with other agents in
8   narcotics investigations, consultation with other sources of information, and the facts set
9   forth herein, I know that the items to be seized set forth in Attachment B (incorporated
10  herein) are likely to be found in the property to be searched described in Attachment A
11  (incorporated herein).   Therefore, I respectfully request that the Court issue a warrant
12  authorizing me, a Special Agent with Homeland Security Investigations, or another federal
13  law enforcement agent specially trained in digital evidence recovery, to search the items
14  described in Attachment A, and seize the items listed in Attachment B.

15
16  MIRIAM MARCAIS
    HSI Special Agent
17
18  Subscribed and sworn to before me this 14th day of November, 2019.

19
20
21  HON. Andrew G. Schopler
    United States Magistrate Judge
22
23
24
25
26
27
                                    9
28  AFFIDAVIT IN SUPPORT OF APPLICATION FOR
    SEARCH WARRANT

**ATTACHMENT A**

PROPERTY TO BE SEARCHED

one black Lenovo cell phone, IMEI# 860069034122055;

("TARGET TELEPHONE")

currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 23, 2018, up to and including October 22, 2018.

a.   tending to indicate efforts to import methamphetamine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.